# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RON CIEUTAT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 20-0012-WS-B |
| | ) |
| HPCSP INVESTMENTS, LLC, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' partial motion to dismiss. (Doc. 5). The parties have filed briefs in support of their respective positions, (Docs. 5, 23, 24), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1-2 at 10-18), the plaintiff started a specialty pharmacy business ("HPC") that caught the eye of defendant Eli Global, LLC ("Eli"). Eli, through unidentified subsidiaries, owns and controls co-defendant HPCSP Investments, LLC ("HPCSP"). Eli helped negotiate the sale of HPC to HPCSP, induced in part by a promise that the plaintiff could stay on as CEO of HPCSP. The plaintiff entered an employment contract with HPCSP, which permitted termination for cause under certain circumstances. The plaintiff also entered a non-competition agreement. The plaintiff was terminated about 21 months later, purportedly for cause.

Count One alleges breach of contract by HPCSP. Count Two alleges that both defendants fraudulently induced the plaintiff to sell HPC. Count Three seeks

a declaratory judgment that HPCSP cannot enforce the non-competition agreement. Count Four asserts a claim against Eli for intentional interference with contractual relations. The instant motion seeks dismissal of Counts Two and Four.

**DISCUSSION**

I. **Fraudulent Inducement.**

The defendants argue that Count Two fails to plead fraud with particularity and that it fails to allege they acted with the requisite intent.

**A. Particularity.**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "We have held that pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *accord Feldman v. American Dawn, Inc.*, 849 F.3d 1333, 1340 (11th Cir. 2017).

Count Two alleges that the defendants, "[d]uring negotiations" and "acting through their authorized agents and representatives," made multiple "false representations," including that they intended to employ the plaintiff as CEO "long term" (meaning "much longer" than the five-year contractual term), which misrepresentations induced the plaintiff to sell HPC. (Doc. 1 at 15-16). The defendants assert that the complaint "fails to identify the time, place, maker, and content of each statement" underlying the fraudulent inducement claim and also fails to allege with particularity "any consequence, damage or injury." (Doc. 5 at 5). The plaintiff argues otherwise. (Doc. 23 at 2-6).

The Court agrees that the complaint fails to satisfy Rule 9(b) in numerous respects. First, an allegation regarding unspecified "agents and representatives"

2

does not identify the "person responsible for the statement." The plaintiff points to the factual background portion of the complaint, where Michael Pereira is identified as Eli's portfolio manager and as having promised the plaintiff he "could stay on" as CEO. (Doc. 1 at 12). Several problems with this reading are apparent: (1) Pereira is not identified as having any position with HPCSP and so could not have made any misrepresentations on behalf of that defendant;[1] (2) the complaint alleges that multiple agents and representatives made the representations, and Pereira is only one person;[2] and (3) a promise the plaintiff could "stay on" post-sale is not the same as a representation he would remain CEO "long term" and "much longer" than five years.

Second, there is no particularized allegation of the time the representations were made. The plaintiff argues that "during negotiations" is sufficiently precise, but on its face that phrase denotes a period of time (possibly a very long time), not a specific date or date range.

Third, the place of the misrepresentations is unstated. The plaintiff notes the allegation in the factual background that Pereira "made an unsolicited trip from North Carolina to Mobile, Alabama to meet with [the plaintiff] about possibly selling his company." (Doc. 1 at 12). The complaint, however, nowhere states that the representations sued upon were made during that visit, or even that this visit – which first broached the possibility of selling HPC – constituted part of the "negotiations" period during which the representations were allegedly made.

Fourth, the complaint does not set forth the "precise statements" that were made but conveys only the general drift of a long-term arrangement. The plaintiff again points to the factual background but, as noted above, there is no allegation

---

[1] Count Four confirms that Pereira negotiated only as a representative of Eli. (Doc. 1 at 17).

[2] Count Four confirms that multiple persons "made representations to [the plaintiff] about his continued employment with the company if he decided to sell the business." (Doc. 1 at 17).

3

there of a representation of continued employment "much longer" than five years but only of a promise that the plaintiff could "stay on" as CEO. Moreover, the complaint alleges multiple "false representations" by multiple persons, without providing the slightest suggestion what other representations might have been made (or by whom, or when, or where).

The plaintiff insists that "the letter and spirit of Rule 9 has been satisfied." (Doc. 23 at 3). Plainly the letter has not been satisfied, and while the spirit may be forgiving of slight imperfections, the complaint's deficiencies are anything but slight.

The Court does agree with the plaintiff that the complaint pleads "consequence, damage or injury" with particularity – assuming without deciding that the *American Dental* criteria include such a requirement. The complaint does not, as the defendants depict it, simply assert without amplification that the plaintiff "has been harmed"; instead, it expressly alleges that the defendants by their fraud induced the plaintiff to sell his company (which he built from scratch and did not want to leave) and then stripped him of his position with (and income from) the company against his will and sought to enforce a non-compete agreement. (Doc. 1 at 12, 16).

**2. Intent.**

"Promissory fraud, unlike misrepresentation, is a claim based upon a promise to act or not to act in the future." *Alabama River Group, Inc. v. Conecuh Timber, Inc.*, 261 So. 3d 226, 245 (Ala. 2017) (internal quotes omitted). "To succeed on a claim of promissory fraud, … plaintiffs must prove two elements in addition to the elements of misrepresentation, namely: proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and proof that the defendant had an intent to deceive." *Id*. (internal quotes omitted).

4

The defendants argue that the plaintiff's fraudulent inducement claim is a species of promissory fraud and that the complaint does not allege the additional elements necessary to support recovery for such fraud. (Doc. 5 at 5-6).[3] The plaintiff assumes for argument that the former proposition is correct, (Doc. 23 at 6), and the Court agrees, since the plaintiff alleges a promise to maintain his employment in the future. *See Brigman v. Dejute*, 593 So. 2d 51, 54 (Ala. 1981) (the plaintiffs' claim of fraudulent inducement "is in the nature of promissory fraud, because it is based upon an alleged promise to perform in the future ….").

The plaintiff, (Doc. 23 at 6-7), argues that he has adequately pleaded the additional elements of promissory fraud because: (1) Count Two alleges an orchestrated plan to keep him on board only long enough to get HPCSP established and operating and then to fabricate reasons to terminate him, (Doc. 1-2 at 16); (2) Pereira authored the termination letter, (*id*. at 34-35); and (3) Count Four alleges that Eli "intentionally and improperly misrepresented its commitment to [the plaintiff] about his continued role with the company as the CEO." (*Id*. at 17). The Court finds these allegations inadequate to satisfy the plaintiff's pleading obligation.

Count Two mentions an "orchestrated plan," but it does not allege that the plan was hatched before the representations were made, that the plan was to hire the plaintiff with the intention of terminating him on pretextual grounds after the new company was up and running, or that the defendants intended to deceive the plaintiff.

The plaintiff does not explain, and the Court cannot perceive, how Pereira's authorship of a termination letter in October 2019 could constitute an allegation

---

[3] "[I]t is … necessary that a complaint contain … allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Security Assurance, Inc. v. Stephens, Inc*., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (internal quotes omitted).

that the defendants in and before January 2018 intended to terminate the plaintiff and intended to deceive him about their intentions.

The threshold problem with the allegations in Count Four is that they are not part of Count Two, which purports to adopt and incorporate previous allegations but not later ones. (Doc. 1-2 at 15). Nor does Count Four allege that the defendants represented that they intended to keep the plaintiff as CEO for many years, that at the time they made such representation they intended not to honor it, or that they intended thereby to deceive the plaintiff. Finally, as to the intent of defendant HPCSP, Count Four is completely silent.

### 3. Leave to Amend.

The plaintiff has not sought leave to amend the complaint should the defendants' motion be granted, and the Court is not required to grant leave in the absence of such a request. *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). *Wagner*, however, was decided in the context of the dismissal of an entire action, resulting in final judgment, and the evil it sought to prevent was that of losing plaintiffs taking a "free" appeal in which, even if the district court was affirmed on its dismissal order, remand was still required to allow an opportunity to amend. *Id*. at 543-44. Because the defendants do not seek dismissal of the entire action, the concern addressed in *Wagner* is not present here. In any event, while *Wagner* does not require courts to grant leave to amend *sua sponte*, neither does it forbid courts to do so.

As this Court has noted, "[o]rdinarily when a party files a vague or deficient complaint, a court will direct the party to refile a properly drafted one that complies with the rules of pleading." *Cobb v. Hawsey*, 2007 WL 3086023 at *3 (S.D. Ala. 2007); *see also Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (old 5th Cir. 1981) ("[D]ismissal for failure to comply with Rule 9(b) is almost always with leave to amend."). The defendants suggest no reason that leave to

file a first amended complaint should be denied at this early stage of the proceedings. Dismissal of Count Two will therefore be with leave to amend.

### B. Intentional Interference with Contractual Relations.

"[A] plaintiff asserting a tortious-interference claim bears the burden of proving that the defendant is a 'third party' or 'stranger' to the contract or business relationship with which the defendant allegedly interfered." *Waddell & Reed, Inc. v. United Investors Life Insurance Co.*, 875 So. 2d 1143, 1154 (Ala. 2003). According to Eli, the complaint effectively "admits" that Eli is not a stranger to the contract between the plaintiff and HPCSP. (Doc. 5 at 6-8; Doc. 24 at 5).

Eli identifies three categories of defendants that are not strangers to a contract: (1) those with a "beneficial or economic interest" in the contract; (2) those with "control over" the contract; and (3) those without whose participation "a contract would not have been consummated." *Waddell & Reed*, 875 So. 2d at 1154. Eli offers no analysis of these phrases (some of which were employed in the context of interference with *business* relations, a claim the plaintiff does not assert) and no comparison of the complaint's allegations to the facts of Alabama cases. The Court finds Eli's cursory treatment inadequate to the task.

Eli suggests that it has a beneficial or economic interest in the contract between the plaintiff and HPCSP because the complaint alleges that Eli, "through various wholly-owned subsidiaries, owns" HPCSP. (Doc. 1-2 at 12). While this allegation might suggest that Eli profits from the contract, Eli offers no law or evidence to show that a remote grandparent or great-grandparent entity necessarily has any beneficial or economic interest in its remote subsidiary's contracts. Nor does Eli demonstrate what Alabama law considers to be a sufficiently substantial beneficial or economic interest, qualitatively or quantitatively, to render a non-party to a contract a non-stranger to that contract.

Moreover, the defendants have represented to the Court, under the shadow of Rule 11, that Eli does *not* own HPCSP. According to their removal papers,

HPCSP is wholly owned by HPCSP Holdings, LLC, which is in turn wholly owned by Greg Lindberg; there is no allegation that Lindberg is in turn owned by Eli. (Doc. 3 at 1).[4] Eli has not explained why the Court should credit the plaintiff's "admission" but not its own.

With respect to control, Eli notes several items purportedly alleged in the complaint: (1) that, through various subsidiaries, Eli controls HPCSP; (2) that Pereira initiated contact with the plaintiff and was involved in negotiations for the sale of HPC; and (3) that Pereira fired the plaintiff.

By its terms, the complaint's allegation of control depends on the accuracy of the allegation that HPCSP is Eli's wholly owned subsidiary. As noted above, Eli admits it has no ownership interest in HPCSP, and it therefore lacks control flowing from such ownership. Moreover, Eli has failed to elucidate what Alabama law accepts as sufficient to constitute "control" for purposes of identifying strangers to a contract, and it is thus impossible to say that the complaint uses the word in a way that satisfies the Alabama standard.

The complaint certainly alleges Pereira's relationship to Eli and his involvement in negotiating a contract between the plaintiff and HPCSP, but Eli does not explain how anything occurring before a contract exists could constitute control over the non-existent contract.

The complaint does not, as Eli asserts, allege that Pereira fired the plaintiff. While it attaches a termination letter from Pereira, (Doc. 1-2 at 34-35), the complaint alleges that HCPSP (not Eli) fired the plaintiff. (*Id*. at 17). Moreover, the complaint alleges that HCPSP did so at the "urg[ing]" of Eli, (*id*.), and a stranger to a contract can urge termination as easily as may a non-stranger.

---

[4] On the contrary, the defendants represent that Eli is solely owned by Lindberg. (Doc. 3 at 1). While Lindberg thus may have an economic or beneficial interest in the contract between HPCSP and the plaintiff, he is not a defendant in this lawsuit, and under the defendants' own allegations Eli plainly has no such interest.

According to Eli, the complaint establishes that the contract would not have been entered if Pereira had never approached HPC. (Doc. 5 at 7). The complaint does not actually say this. The complaint says that Pereira initiated contact with the plaintiff, but it does not rule out the possibility that the parties might have gotten together via some other route. In any event, Eli has not shown that such tangential but-for causation is what the Alabama Supreme Court means by "would not have been consummated without the participation of a certain party." *Waddell & Reed*, 875 So. 2d at 1154.

Moreover, the actual test appears to be not whether the contract "*would* not have been consummated" but whether the contract "*could* not have [been] consummated." In expressing the rule, the *Waddell & Reed* Court relied on *BellSouth Mobility, Inc. v. Cellulink, Inc*., 814 So. 2d 203 (Ala. 2001), which used the latter, more restrictive formulation. Because the *Waddell & Reed* case did not involve this situation, its relaxed reformulation appears to be dicta.

It may well be that, following discovery and a more thorough examination of Alabama law, Eli will be in a position to demonstrate that it is not a stranger to the contract for purposes of a claim for intentional interference with contractual relations. The Court has and expresses no opinion on that score. On the present record and argument, however, Eli is not entitled to dismissal of this claim.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **granted** as to Count Two and **denied** as to Count Four. Count Two is **dismissed**, with leave to file and serve an amended pleading on or before **March 6, 2020**, failing which Count Two will stand dismissed with prejudice.

DONE and ORDERED this 21st day of February, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE